IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | ) | Civil No. 2:07-cv-00984-BSJ |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION AND** |
| vs. | ) | **ORDER** |
| | ) | |
| EDIZONE, LC, a Utah Limited Liability | ) | |
| Company; and ADVANCED COMFORT | ) | |
| TECHNOLOGY, INC., a Utah | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

```
┌─────────────────────────────┐
│            FILED            │
│  CLERK, U.S. DISTRICT COURT │
│     May 10, 2011 (4:33pm)   │
│       DISTRICT OF UTAH      │
└─────────────────────────────┘
```

* * * * * * * * *

On March 30, 2009 Defendant Advanced Comfort Technology, Inc. ("ACTI") filed a

"Motion for Clarification"[1] regarding this Court's Order granting summary judgment in favor of

Plaintiff Essex Insurance Company ("Essex").[2]  Defendant EdiZONE, LC ("EdiZONE") joined

ACTI's "Motion for Clarification" and its position regarding standing.[3]  The motion could be

more accurately called a motion for amplification.

The Court set the matter for argument on April 29, 2009.  Gary L. Johnson appeared on

behalf of the Plaintiff and Mark M. Bettilyon and Caleb J. Frischknecht appeared on behalf of

---

[1] (Motion for Clarification, filed Mar. 30, 2009 (dkt. no. 38).)

[2] (Order, filed Mar. 19, 2009 (dkt. no. 37)("March 18th Order").)

[3] (EdiZONE's Joinder in ACTI's Defense and Supplemental Mem. Regarding Standing, filed May 28, 2009 (dkt. no. 48).)

Defendant ACTI. Upon direction from this Court, the parties provided supplement memoranda following the hearing related to ACTI's standing to pursue coverage.[4]

Additionally, on March 1, 2010 ACTI filed a notice indicating that ACTI had acquired "all right, title, and interest of Defendant EdiZONE, LC" in the Essex insurance policies including "all claims related thereto."[5] On the same day, ACTI filed a Motion for Leave to File Amended Answer and Counterclaim ("Motion to Amend").[6] A hearing on the Motion to Amend was held on June 3, 2010 with Gary L. Johnson appearing on behalf of the Plaintiff and Mark M. Bettilyon and Caleb J. Frischknecht appearing on behalf of Defendant ACTI.[7] The Court reserved on the Motion to Amend.[8]

Having carefully considered the Parties' memoranda and arguments, as well as the law and facts relevant to the "Motion for Clarification" and the Motion to Amend, the Court GRANTS the "Motion for Clarification" and enters the following Order.

## I. Background

This is a case about an insurance company's duties to defend and indemnify. Since the filing of this motion the parties have peppered this Court with motions and memoranda addressing the same core issue, *i.e.* did ACTI's lawsuit against EdiZONE give rise to a duty to defend or indemnify by Essex under Coverage B of an insurance contract between EdiZONE and

---

[4] (ACTI's Supplemental Mem. Regarding Standing, filed May 20, 2009 (dkt. no. 46); Essex's Mem. Concerning ACTI's Standing to Affirmatively Pursue Coverage, filed May 27, 2009 (dkt. no. 47).)

[5] (Notice of ACTI's Acquisition of EdiZONE's Interests in the Essex Insurance Policies, filed Mar. 1, 2010 (dkt. no. 53), at 1-3.)

[6] (Mot. for Leave to File Amended Answer and Counterclaim, filed Mar. 1, 2010 (dkt. no. 55).)

[7] (Hearing Transcript, Jun. 4, 2010 (dkt. no. 63), at 2.)

[8] (*Id.* at 45.)

Essex?

EdiZONE is the holder of several technology and trademark rights related to Intelli-Gel, which is a gel cushioning structure used in pillows, mattresses, and mattress overlays.[9] EdiZONE licensed certain rights to ACTI related to Intelli-Gel in January 2002.[10]  In exchange for the license ACTI was obligated to pay EdiZONE royalties.[11]  The License Agreement provided that the ACTI's license would "continue perpetually unless terminated . . . pursuant to the terms of the Agreement."  Insolvency of ACTI was one ground upon which the license could be terminated.[12]

Just over a year later ACTI entered into a "Supply Agreement" with Sunshine Manufacturing ("Sunshine") under which Sunshine agreed to manufacture and sell to ACTI products using the Intelli-Gel technology.[13]  Under the Supply Agreement ACTI was to purchase Intelli-Gel products exclusively from Sunshine and Sunshine was required to fill ACTI's orders for the products within 30 days from when the orders were received.[14]

The relationship between EdiZONE and ACTI began to deteriorate in February 2006 when EdiZONE served ACTI with a notice of breach and demand to cure based on the claim that ACTI was insolvent.[15]  The dispute was temporarily resolved the following month via a

---

[9] (EdiZONE's Mem. in Supp. of Mot. for Summ. J., filed Sept. 29, 2008 (dkt. no. 24), at Ex. B ("License Agreement").)

[10] (*Id.*)

[11] (*Id.* at ¶ 4.2.)

[12] (*Id.* at ¶ 13.15.)

[13] (Complaint, filed Dec. 19, 2007 (dkt. no. 1), at ¶ 11.)

[14] (*Id.* at ¶ 11.)

[15] (*Id.* at ¶ 12.)

"Settlement Agreement" entered into by EdiZONE, ACTI, Sunshine and others.[16]

Two months after signing the Settlement Agreement EdiZONE sent ACTI a second notice of breach and demand to cure based on its claim that ACTI did not provide sufficient detail in its most recent royalty report.[17] That notice was followed by another on June 21, 2006 which purported to terminate ACTI's license.[18]

In September 2006 ACTI filed a Second Amended Complaint against EdiZONE for several contract and business tort claims in the Third Judicial District Court, State of Utah (referred to as "the underlying lawsuit").[19] Allegations included in the Second Amended Complaint that are particularly relevant to this discussion are as follows:

> 48. EdiZONE's unilateral declaration that the License Agreement is terminated is a breach of the License Agreement.

> 55. On August 30, 2006, however, EdiZONE instructed Sunshine to refuse to fill the Purchase Orders. Sunshine indicated it would not fill the Purchase Orders because EdiZONE, which was not a party to the Supply Agreement, instructed Sunshine to breach the Supply Agreement by not fulfilling ACTI' s Purchase Orders.

> 73. Because of EdiZONE's continued false representations to others in the industry that the License Agreement is terminated, ACTI has been significantly constrained in its attempts to expand and grow its business. For instance, at least two franchisees have declined to do business with ACTI, resulting in a loss in excess of $1 million in franchise fees alone.

> 74. Furthermore, ACTI has paid EdiZONE more than $2 million in royalty fees since the parties entered into the License Agreement, notwithstanding the fact that EdiZONE contends the License Agreement is terminated and has used that falsity to interfere with ACTI's contractual relations with Sunshine, under which Sunshine

---

[16] (Pl. Essex's Mem. in Supp. of Mot. for Summ. J., filed Sept. 29, 2008 (dkt. no. 22), at Ex. E: 12 of 69, ¶ 32 ("Second Amended Complaint").)

[17] (Complaint (dkt. no. 1), at ¶ 13.)

[18] (*Id.* at ¶ 15; Answer, filed May 14, 2008 (dkt. no. 3), at ¶ 15.)

[19] (Complaint (dkt. no. 1), at ¶¶ 8 - 37.)

must supply gel product to ACTI.

93. By withholding funds rightfully due ACTI or causing the diversion of funds away from ACTI, Defendants have financially damaged ACTI in an attempt to show that ACTI is insolvent, thereby creating false pretense to claim that ACTI is in violation of the License Agreement.

99. EdiZONE, by improper means and with improper purpose, intentionally caused Sunshine to breach the Supply Agreement.

166. Defendants, by their tortious conduct described above, including but not limited to offering license technology and trademark rights to third-parties and interfering with ACTI's rights under the Settlement Agreement, have, by improper means and with improper purpose, interfered with ACTI's existing and prospective contractual and business relations, including but not limited to, expansion plans, relationships with franchisees, relationships with customers and relations in the industry.

The underlying lawsuit was tried to a jury from July 25, 2008 to August 18, 2008.[20] The jury found EdiZONE liable to ACTI for the total amount of $3,270,001 broken down between the following "five related causes of action": (1) breach of license agreement ($1,566,667); (2) breach of settlement agreement ($535,000); (3) breach of the covenant of good faith and fair dealing ($512,500); (4) intentional interference with contractual relations ($304,167); and (5) intentional interference with existing and prospective contractual and business ($351,667).[21]

EdiZONE tendered defense of the underlying lawsuit to Essex in the fall of 2007.[22] Essex evaluated the potential for coverage and determined that there was no duty to defend or indemnify based on the allegations in the complaint.[23] Essex then filed this action for declaratory

---

[20] (Def. ACTI's Mem. Supplemental re: Orders related to Underlying Litigation, filed Jan. 26, 2009 (dkt. no. 35), at Ex. A: 3 of 19.)

[21] (Pl. Essex's Mem. in Supp. of Mot. for Summ. J. (dkt. no. 22), at Ex. K: 5-7 ("Special Verdict Form").)

[22] (Opp. to Essex Mot. for Summ. J. by EdiZONE, filed Oct. 29, 2008 (dkt. no. 26), at ¶ 10 (Essex contends the notice of claim was given on Nov. 5, 2007 while EdiZONE contends that notice was on Oct. 31, 2007); Pl. Essex Ins. Co.'s Mem. in Supp. of Mot. for Summ. J. (dkt. no. 22), at Ex. F: 1 and 4.)

[23] (Complaint (dkt. no. 1), at 2.)

relief concerning its duties and obligations under three insurance contracts Essex issued to EdiZONE between 2005 and 2008.[24]

The first policy, 3CQ7660, ran for 12 months starting on March 7, 2005.[25]  The policy period for the second policy, 3CT7956, is from March 31, 2006 to March 31, 2007.[26] A notable change between the first and second policies is the substance of the Combination General Endorsement ("CGE").  The CGE in Policy 3CT7956 expressly excludes coverage of claims "arising out of breach of contract," *inter alia*.[27]  The third policy, 3CW7312, which has a policy period from March 31, 2007 to March 31, 2008 further limits coverage.  Coverage is completely excluded for "products/completed operations" and "personal and advertising injury".[28]

Essex and EdiZONE submitted cross-motions for summary judgment on the question of whether coverage for the underlying lawsuit fell within one of the three insurance contracts listed above.  On March 18, 2009 this Court granted summary judgment in favor of Essex.  The Court found, "[t]here was no 'occurrence' within the meaning of the Essex policy; nor was there 'property damage' as defined by the policy.  Having so decided, there is no useful purpose in dealing with the remaining issues, the same being moot."[29]

ACTI requests "clarification" on the Court's March 18th Order specifically with respect to the availability of coverage under "Coverage B," which deals with Essex's indemnification and

---

[24] (*Id.* at 2 and ¶¶ 38-63.)

[25] (Pl. Essex Ins. Co.'s Mem. in Supp. of Mot. for Summ. J. (dkt. no. 22), at Ex. H ("Policy 3CQ7660").)

[26] (*Id.* at Ex. I ("Policy 3CT7956").)

[27] (Policy 3CT7956, at ME-001 (01/05) ¶¶ 1, 5, and 10(j).)

[28] (Pl. Essex Ins. Co.'s Mem. in Supp. of Mot. for Summ. J. (dkt. no. 22), at Ex. J: 011-1061 (08-02), M/E-159 (4/99), and M/E-173 (4-99) (entire policy referred to as "Policy 3CW7312").)

[29] (March 18th Order (dkt. no. 37), at 2.)

defense obligations for "personal and advertising injury."[30]  ACTI contends that a finding that there was no "occurrence" and no "property damage" does not affect whether there is coverage under "Coverage B."[31]

## II.  Analysis

### A.  Standing

Common sense dictates that if a declaratory action is brought by an insurer against an insured *and* an injured party, then the injured party may raise its own defense.  The United States Supreme Court along with several jurisdictions have held that an actual controversy exists between an insurer and an injured party which supports the inference that the injured party has a right to participate in that controversy.  *See, e.g. Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 274 (1941); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962); *Penn Am. Ins. Co. v. Valade*, 28 F. App'x. 253, 257 (4th Cir. 2002); *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 646 n.2 (D. Md. 2009).  Moreover, the Federal Rules of Civil Procedure require a party against whom a judgment for affirmative relief is sought to plead or otherwise defend itself or face default.  Fed. R. Civ. P. 55(a).

ACTI is a named defendant in this action filed by Essex.  Accordingly, ACTI is entitled to raise its own defense to the claims made by Essex.  ACTI's right is not contingent upon EdiZONE's and ACTI may assert any arguments relevant to its defense regardless of the position EdiZONE takes on the same issues.  Throughout the litigation of this matter ACTI has argued

---

[30] (Policy 3CT7956 (dkt. no. 22-4), at CG 00 01 10 01: 5 of 14.)

[31] (Mem. in Supp. of Mot. for Clarification, filed Mar. 30, 2009 (dkt. no. 39), at 2.)

that Essex is obligated to "indemnify and satisfy any judgment rendered against EdiZONE in the underlying litigation."[32]  ACTI also asserts that its complaint in the underlying lawsuit alleged both "property damage" and "personal and advertising injury."[33]  The "Motion for Clarification" specifically asks the Court whether coverage exists for the alleged "personal and advertising injury."  Thus, the "Motion for Clarification" is merely an extension of ACTI's defense and ACTI is within its rights to request further explanation of the March 18th Order.[34]

## B. Interpretation of the Policy

A moving party is entitled to summary judgment as a matter of law only if no genuine issue of material fact exists.  Utah R. Civ. P. 56(c); *S.W. Energy Corp. v. Continental Ins. Co.*, 1999 UT 23, ¶ 11, 974 P.2d 1239.  A contract may be interpreted as a matter of law "[w]here the language is unambiguous" and "the parties' intentions are determined from the plain meaning of the contractual language."  *Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185; *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 21, 133 P.3d 428.  Insurance policies are contracts and therefore subject to principles of contract interpretation.  *Benjamin v. Amica Mutual Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210.

"An insurer may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."  *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272,

---

[32] (ACTI's Answer, filed Jul. 31, 2008 (dkt. no. 12), at 20.)

[33] (ACTI's Mem. in Opp'n to Essex's Mot. for Summ. J., filed Oct. 29, 2008 (dkt. no. 28), at 2-3.)

[34] This narrow holding addresses only whether ACTI may move this Court for clarification of its order. It does not address whether ACTI may independently assert that Essex has a duty to defend—as opposed to a duty to indemnify—EdiZONE against the underlying lawsuit or whether acquisition of the EdiZONE's rights and claims in the insurance policy confers more expansive standing on ACTI.  Those are questions for another day in another case where they are more squarely at issue.

1275 (Utah 1993). Only ambiguous provisions that limit or exclude coverage should be liberally construed against the insurer. *United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993); *S.W. Energy Corp.*, 1999 UT at ¶ 12. The insurer bears the burden of showing that an exclusion is applicable. *LDS Hosp., Div. of Intermountain Health Care v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988).

Whether a claim falls within an exclusion is determined by examining the allegations in the underlying complaint. *Sharon Steel Corp. v. Aetna Cas. & Sur.*, 931 P.2d 127, 133 (Utah 1997). If there is no potential liability under the insurance policy—based either on how the coverage is defined or based on an exclusion—the insurer has no duty to defend. *Id.* It follows that the insurer also has no duty to indemnify because if there is no potential liability, there can be no actual liability.

Under "Coverage B Personal and Advertising Injury Liability," Essex "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We [Essex] will have the right and duty to defend the insured against any 'suit' seeking those damages."[35] "Personal and advertising injury" as defined in Policy 3CT7956[36] includes injury arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ."[37] Policy 3CT7956 excludes coverage of

---

[35] (Policy 3CT7956 (dkt. no. 22-4), at CG 00 01 10 01: 5 of 14.)

[36] The court in the underlying lawsuit found that "the events leading to the damages awarded to ACTI occurred in the summer of 2006." Def. ACTI's Mem. Supplemental re: Orders related to Underlying Litigation (dkt. no. 35), at Ex. A: 6 of 19. Therefore, any potential "offense" that could give rise to a duty to defend or indemnify occurred during the policy period for Policy 3CT7956 which was from March 31, 2006 to March 31, 2007. Policy 3CQ7660 and Policy 3CW7312 are inapplicable.

[37] (Policy 3CT7956 (dkt. no. 22-4), at CG 00 01 10 01: 13 of 14.)

"personal and advertising injury" arising out of a breach of contract[38] and "claims" arising out of breach of contract.[39]

ACTI contends that its claims for intentional interference with contract and tortious interference with existing and prospective contractual and business relations ("the interference claims") "sought damages for the publication of material that slandered ACTI's reputation and disparaged its goods and services, which constitutes 'personal and advertising injury'" covered under the insurance policy.[40] For the purposes of this analysis I assume without determining that ACTI's allegations fit within the definition of "personal and advertising injury." No determination on that question is necessary because ACTI's interference claims comfortably fit within the breach of contract exclusions as explained below.

Neither Essex nor ACTI claim the terms of the policy are ambiguous and I agree. Therefore, the policy provision must be interpreted giving "arising out of" its usual and ordinary meaning. The law in Utah is clear, the words "arising out of" as used in liability insurance policies are very broad, general and comprehensive." *Nat'l Farmers Union Prop. and Cas. Co. v. Western Cas. and Surety Co.*, 577 P.2d 961, 962 (Utah 1978). "Arising out of" has been interpreted to mean "originating from, growing out of, or flowing from and require[s] only that there be some causal relationship between the injury and the risk for which coverage is provided." *Id.*; *see also Meadow Valley Contractors, Inc. v. Transcon. Ins. Co.*, 2001 UT App 190, ¶ 14, 27 P.3d 594. The Utah interpretation is consistent with the general consensus that the

---

[38] (Policy 3CT7956, at CG 00 01 10 01: 5 of 14.)

[39] (Policy 3CT7956, at ME-001(01/05): ¶ 5.)

[40] (ACTI's Opp'n to Essex Mot. for Summ. J., filed Oct. 29, 2008 (dkt. no. 28), at 9 and 12.)

phrase "arising out of" requires some causal connection, but does not require a showing of proximate cause. *Federal Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 803 (10th Cir 1998) (holding that exclusion of bodily injury arising out of the operation of certain equipment precluded coverage and providing large sampling of cases from other jurisdictions which give "arising out of" a broad reading); *Callas Enter., Inc. v. Travelers Indem. Co. of Am.*, 193 F.3d 952 (8th Cir. 1999) (broadly construing breach of contract exclusion under Minnesota law and holding that trademark claims arose out of alleged breach of exclusive agency contract).

Turning first to ACTI's claim that EdiZONE interfered with existing contractual relations, ACTI alleges that EdiZONE "intentionally caused Sunshine to breach the Supply Agreement." According to ACTI this interference was accomplished through EdiZONE's representations to Sunshine that ACTI's license had been terminated. ACTI alleges that "EdiZONE's unilateral declaration that the License Agreement is terminated is a breach of the License Agreement." This allegation provides the causal connection between the injury and the breach of contract. If the reason EdiZONE instructed Sunshine not to fill ACTI's orders was that the license was terminated and if the termination constituted a breach of contract as ACTI alleges, then the interference clearly arose out of the breach. The link is undeniable; the same statement that allegedly breached the License Agreement also caused the contractual interference.

ACTI's claim for tortious interference with existing and prospective contractual and business relations arises out of breach of contract for the same reasons listed above. ACTI claims EdiZONE made "false representations to others in the industry that the License Agreement is terminated" and that as a result "at least two franchisees have declined to do business with ACTI." The injury, the loss of a potential business partner, arose out of

EdiZONE's statements that the license had been terminated. The termination itself was an alleged breach of contract; thus, the injury arose out of the breach.

Moreover, ACTI alleges that EdiZONE offered the Intelli-Gel technology and trademark rights to third-parties and thus violated the Settlement Agreement. The Settlement Agreement provides "EdiZONE hereby assigns to ACTI the entirety of EdiZONE's right, title and interest in and to the trademark Intelli-Bed."[41] It also states, "EdiZONE will not grant a trademark license for the trademark Intelli-Gel® to any licensee of buckling column structures made from foamed gel, Goooz, gel-coated foam, or gel-coated objects."[42] ACTI alleges that EdiZONE violated these provisions of the Settlement Agreement thereby breaching the agreement and simultaneously interfering with ACTI's rights under the agreement. Therefore, this interference claim arises out of breach of both the License Agreement and the Settlement Agreement.

In sum, the interference claims are derivative of ACTI's breach of contract claims. They cannot stand alone and apart. Accordingly, the exclusion of "claims arising out of breach of contract" in the CGE of Policy 3CT7956 applies and coverage is precluded.

## III. Clarification

ACTI's interference claims, including the purported "personal and advertising injury" on which those claims are based, arise out of breach of contract. The CGE excludes coverage of such claims. Therefore, Essex has no duty to defend and no duty to indemnify EdiZONE under "Coverage B" of Policy 3CT7956. Having found as a matter of law that no coverage exists under the insurance policy, the amendments suggested by ACTI in its Motion to Amend are moot.

---

[41] (Second Amended Complaint (dkt. no. 22), Ex.E: ¶ 33.)

[42] (*Id.* at ¶ 34.)

Therefore,

**IT IS ORDERED** that Defendant ACTI's Motion to Amend is **DENIED**.

DATED this _10_ day of May, 2011.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge